**839 E. 19TH STREET, L.P., Appellant**

v.

**Scott FRIEDSON d/b/a National Income Property, LLC, Appellee.**

**No. 14–11–00349–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 2012.

Rehearing Overruled June 6, 2012.

James Alexander McCorquodale, Dallas, for appellant.

Andrew Patrick Parma, Allan G. Levine, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices JAMISON and McCALLY.

## MAJORITY OPINION

SHARON McCALLY, Justice.

Appellant, 839 E. 19th Street, L.P., appeals the trial court's judgment in favor of appellee, Scott Friedson d/b/a National Income Property, LLC, on Friedson's claim for an unpaid broker's commission. We reverse and render judgment that Friedson take nothing on his claims.

### BACKGROUND

Scott Friedson, who is a licensed broker and was doing business as National Property Income, LLC, entered into a listing agreement with Waloon Properties, the owner of the Mesa Ridge apartment complex. The listing agreement ended on April 30, 2006, with a "protection period" covering the ninety days after the ending date. Nachman Borenstein of 839 E. 19th Street found the Mesa Ridge property in an internet search, and contacted Friedson about the property. Friedson delivered a copy of a title insurance policy, financial information, rent rolls, and other due diligence materials to Borenstein. Friedson brokered an offer from 839 E. 19th Street dated April 7, 2006, to purchase the prop-

erty for $5,800,000. Waloon Properties rejected this offer.

After the primary term of the listing agreement with Waloon Properties expired, Borenstein contacted Friedson. Friedson entered into a buyer representation agreement with 839 E. 19th Street, covering only the Mesa Ridge property. The agreement provided for a four percent commission to be paid by the buyer. The term of the buyer representation agreement ran from May 9, 2006, through September 29, 2006, with a "protection period" extending for 120 days after the termination of the agreement.

Friedson brokered a second offer from 839 E. 19th Street dated May 30, 2006, to purchase the property for $6,250,000. This offer expired for lack of acceptance by Waloon Properties. After the second offer expired, Waloon Properties told Friedson that it had decided not to sell the property, but, instead, refinance it. Borenstein represented to Friedson that he was no longer interested in purchasing the property or dealing with its owner.

Friedson did not list the prospects to be protected under the buyer representation agreement during the 120–day "protection period." 839 E. 19th Street placed the property under contract with Waloon Properties on November 6, 2006, which was during the 120–day "protection period." Waloon Properties sold the property to 839 E. 19th Street for $6,350,000.00. The closing and transfer of the property occurred on January 29, 2007.

Friedson was not paid a commission on the transaction. Friedson affixed a lien to the property to secure his commission and gave notice pursuant to section 62.024 of the Texas Property Code. Friedson sued 839 E. 19th Street for breach of contract, equitable estoppel, tortious interference,

and civil conspiracy.[1] 839 E. 19th Street asserted the affirmative defense of failure to perform a condition precedent, and counterclaimed for breach of fiduciary duty and fraud. After holding a bench trial, the trial court entered findings of fact and conclusions of law on November 30, 2010, and entered a final judgment on January 19, 2011, in favor of Friedson for breach of the buyer representation agreement. The trial court awarded Friedson $254,000, which represents a four percent commission on the $6,350,000 sales price.[2] 839 E. 19th Street filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## ANALYSIS

### Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam).[3]

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not.

*City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex.2005). We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.* at 810.

To evaluate the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

We review the trial court's conclusions of law de novo. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.-Houston [14th Dist.] 2010, no pet.). We review conclusions of law to determine whether the conclusions drawn from the facts are correct. *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *Busch*, 312 S.W.3d at 299. We uphold conclusions of

---

1. Friedson also sued Waloon Properties, Xin Ling Zhoa, William G. Wang, and Chauyen Chang a/k/a Tony Chang, but nonsuited them on February 6, 2009.

2. Although Friedson also sued Borenstein and 839 East 19 Street G.P. Corp., the general partner of 839 E. 19th Street, the trial court entered judgment against only 839 E. 19th Street.

3. Friedson claims that 839 E. 19th Street waived its issues on appeal by failing to present them to the trial court. 839 E. 19th Street challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment. In a nonjury trial, complaints regarding the legal and factual sufficiency of the evidence can be raised for the first time on appeal. Tex.R.App. P. 33.1(d).

law if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

In its first and second issues, 839 E. 19th Street contends that the agreement contained a written-notice condition precedent which Friedson failed to satisfy, and that such failure was not excused. In its third and fourth issues, 839 E. 19th Street contends that the trial court erred by applying the "procuring cause" standard rather than the contractual "called attention to" standard, and determining that Friedson was entitled to recover his broker's fee though he did not show that he "called to [839 E. 19th Street's] attention" the subject property.

## Whether the Protection Period Applies

Because we find 839 E. 19th Street's fourth issue dispositive, we address it first. Paragraph 11B of the buyer representation agreement between Friedson and 839 E. 19th Street provides, in relevant part:

*Protection Period:* "Protection Period" means that time starting the day after this agreement ends and continuing for 120 days. Not later than 10 days after this agreement ends Broker may send Client written notice identifying the properties in the market area called to Client's attention during this agreement. If during the protection period Client agrees to acquire all or part of any such property, Client will pay Broker, upon closing, an amount equal to the fees Broker would have been entitled to receive had Client acquired the property during the term of this agreement. This

Paragraph 11B survives termination of this agreement.

839 E. 19th Street claims that Friedson was not entitled to recover his broker's fee because he did not show that he "called to [839 E. 19th Street's] attention" the subject property. Our primary concern when we construe a written contract is to ascertain the parties' intent as expressed in the contract. *In re Serv. Corp. Int'l,* 355 S.W.3d 655, 661 (Tex.2011) (per curiam) (orig. proceeding). We agree that the contractual protection period does not apply to the Mesa Ridge property or this dispute. It is undisputed, and the trial court specifically found, that the Mesa Ridge property is **the** property that the parties made the subject of their agreement. It is further undisputed, and the trial court specifically found, that Friedson brokered an offer from 839 E. 19th Street on the Mesa Ridge property on April 7, 2006. The agreement period began May 9, 2006, and ended September 29, 2006. Under the plain language of paragraph 11B, the "protection period" only applies to "such property" that Friedson called to 839 E. 19th Street's attention between May 9, 2006, and September 29, 2006. Therefore, even if Friedson called the Mesa Ridge property to 839 E. 19th Street's attention,[4] he did so prior to the agreement. The parties agree that Friedson called other properties to 839 E. 19th Street's attention during the agreement, but after the Mesa Ridge sale fell through. However, because Friedson is not attempting to recover commissions on any property "called to Client's attention during this agreement," paragraph 11B does not apply here. We sustain 839 E. 19th Street's fourth issue.[5]

**4.** 839 E. 19th Street urges that inasmuch as it initially discovered the property on the internet and then itself contacted Friedson, Friedson could not have contractually called the property to its attention.

**5.** Because we hold that the contractual protection period does not apply to this dispute, we need not decide whether paragraph 11 B is condition precedent. Moreover, because the undisputed facts show that 839 E. 19th Street learned of the property before entering

CONCLUSION

Having sustained 839 E. 19th Street's fourth issue, we reverse the trial court's judgment and render judgment that Friedson take nothing on his claims against 839 E. 19th Street.

JAMISON, J., dissenting.

MARTHA HILL JAMISON, Justice, dissenting.

Because I find that the second offer brokered by Friedson on May 30, 2006, also called 839 E. 19th Street's attention to the Mesa Ridge property, and because that date falls within the agreement period, I respectfully disagree that paragraph 11B of the buyer's representation agreement does not apply. Accordingly, I would overrule 839 E. 19th Street's first and second issues. I also would overrule 839 E. 19th Street's third and fourth issues and affirm the trial court's judgment.

In its first issue, 839 E. 19th Street contends that the agreement contained a condition precedent requiring Friedson to send 839 E. 19th Street written notice identifying any properties in the market area called to 839 E. 19th Street's attention during the agreement period before the protection period would apply. In its second issue, 839 E. 19th Street argues that Friedson failed to give written notice and that his failure was not excused.[1] "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex.2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex.1992)). To determine whether a condition precedent exists, we look at the contract to ascertain the intent of the parties. *Id.* at 109. Conditional language such as "if," "provided that," or "on condition that" must generally be included in order to make performance specifically conditional. *Id.*

The contested language in Paragraph 11B states:

Not later than 10 days after this agreement ends Broker may send Client written notice identifying the properties in the market area called to Client's attention during this agreement. If during the protection period Client agrees to acquire all or part of any such property, Client will pay Broker, upon closing, an amount equal to the fees Broker would have been entitled to receive had Client acquired the property during the term of this agreement.

The "may" language found in the first sentence provides the broker with the election of whether or not to invoke the protection period. However, the "if" language in the next sentence makes the payment of fees to the broker for properties purchased outside the agreement period but during the protection period[2] subject to the condition precedent that the broker provide written notice identifying the protected properties. Therefore, I would find that paragraph 11B is a condition precedent.[3] *See Belmont Constructors, Inc. v.*

---

into the buyer representation agreement, we need not decide whether the "procuring cause" or "called attention to" standard applies in this case.

1. The trial court found that "the language in the [agreement] regarding the 'protection period' was permissive rather than mandatory."

2. The client only needed to "agree[ ] to acquire" the property during the protection period; paragraph 11B does not require that the closing take place during the 120–day period.

3. The trial court may be affirmed even though it entered an erroneous conclusion of law, so long as the trial court rendered the proper

*Lyondell Petrochemical Co.,* 896 S.W.2d. 352, 357 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (language stating that "[i]f the parties cannot agree within 10 days on a different method of resolving the matter" created a condition precedent). I respectfully disagree with the majority that only the April 7, 2006 offer brokered by Friedson called attention to the Mesa Ridge property. I would hold that the second offer brokered on May 30, 2006, also called attention to the Mesa Ridge property. Accordingly, I would conclude that Friedson sufficiently called 839 E. 19th Street's attention to the Mesa Ridge property during the agreement period.[4]

Because I would conclude that paragraph 11B is a condition precedent, I must decide whether Friedson satisfied the condition precedent. Friedson did not send a separate written notice to 839 E. 19th Street that he intended Mesa Ridge to be covered by the protection period.[5] However, paragraph 17 of the buyer's representation agreement provides a special provision: "BUYER REPRESENTATION AGREEMENT LIMITED TO MESA RIDGE APARTMENTS." Under the unique facts of this case, where the agreement expressly identifies on its face only one specific piece of property—the Mesa Ridge property—it was not necessary for Friedson to notify 839 E. 19th Street in a separate notice that Mesa Ridge was a property called to its attention during the agreement.[6] I would therefore overrule 839 E. 19th Street's first and second issues.

In its third issue, 839 E. 19th Street argues that, assuming paragraph 11B is not a condition precedent or a condition for which performance was excused, the trial court applied the wrong standard in determining Friedson's entitlement to a broker's fee under the buyer's representation agreement. The agreement provides protection for properties "called to the Client's attention during this agreement." The trial court applied a "procuring cause" standard.[7] 839 E. 19th Street further complains in its fourth issue that Friedson cannot recover under the "called attention to" standard because Borenstein found the property in an internet search prior to the agreement.

Friedson argues that "procuring cause" is the applicable standard. " 'Procuring cause' is defined as 'the cause originating a series of events, which, without [a] break in their continuity, result in the accomplishment of the prime object.' " *Truman Arnold Cos. v. Hammond & Consultants Enters., Inc.,* No. 12–09–00099–CV, 2010 WL 2982912, at *8 (Tex.App.-Tyler July 30, 2010, no pet.) (mem. op.) (quoting Black's Law Dictionary 1208). "Thus, 'a broker will be regarded as the "procuring cause" of a sale, so as to be entitled to commission, if his or her efforts are the foundation on which the negotiations resulting in a sale are begun.' " *Id.* (quoting BLACK'S LAW DICTIONARY 1208). According to Friedson, the law allows a broker's rights to a commission to continue for a reasonable time after termination of a bro-

---

judgment. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002).

4. The agreement period ran from May 9, 2006, through September 29, 2006.

5. Under Paragraph 11B of the agreement, notice must be given "not later than 10 days after this agreement ends."

6. The trial court found that "[b]ecause only one property was involved in the [agreement], designation was not necessary to invoke the protection period."

7. The court found "that Friedson was the procuring cause of the January 29, 2007, transaction," *i.e.,* 839 E. 19th Street's purchase of Mesa Ridge.

**680**

ker's contract, so that the broker will not be deprived of his commission. *See Ramesh v. Johnson*, 681 S.W.2d 256, 259 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). 839 E. 19th Street does not challenge Friedson's efforts on its behalf or the connection of those efforts to the Waloon Properties sale.

The agreement permitted Friedson to identify properties "called to" 839 E. 19th Street's attention during the agreement. *See Kaye v. Coughlin*, 443 S.W.2d 612, 613 (Tex.Civ.App.-Eastland 1969, no writ) (rendering judgment for realtor where jury found realtor called buyer's attention to property, though jury also found that sale did not result from efforts of Realtor, and applying contract term to pay commission "if said property is sold ... to any purchaser whose *attention had been called to* [that] particular property" [emphasis added]). Appellant has not cited and research has not revealed authority that establishes or defines as a matter of law a "called attention to" standard for broker's commissions generated during a protection period.

Nothing in the plain language of the agreement limits "calling attention to" only to the initial discovery of a property. I disagree with the majority that the first offer brokered by Friedson would forever bar him from later "calling attention to" the property. I disagree as well that a potential buyer could discover a property through an internet search, as 839 E. 19th Street claims here, through a newspaper advertisement, or by driving down the street and, in so doing, forever bar a broker from later "calling his attention to" the property, regardless of the broker's time and effort towards the sale.

However, I need not decide whether a "called attention to" standard exists or, if it does, which standard applies here. Under the unique circumstances of this case and the specific language of this agreement, which expressly designates the property at issue, the evidence is sufficient to support the trial court's findings of fact. The court found, in part, that "Friedson brokered a second offer" and that "[t]he [second offer] was essentially equivalent to the transaction in which the sale was completed." Under those findings, which are supported by the evidence,[8] Friedson called 839 E. 19th Street's attention to the property, and his efforts were the foundation on which the negotiations resulting in a sale began. I would therefore overrule 839 E. 19th Street's third and fourth issues.

Because I would overrule 839 E. 19th Street's four issues, I would affirm the trial court's judgment.

---

8. The second offer was for $6,250,000.00. 839 E. 19th Street's purchase of Mesa Ridge was for $6,350,000.00.